UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| MICHAEL STEPHEN VAUGHN,<br>        *Appellant*,<br><br>v.<br><br>H. JASON GOLD,<br>        *Appellee.* | 1:25-cv-00217-MSN-IDD |

**MEMORANDUM OPINION AND ORDER**

Appellant Michael S. Vaughn filed for Chapter 13 bankruptcy four years ago. His case was converted into a Chapter 7 liquidation due to his failure to disclose multiple pre-petition transfers. In the course of managing the Chapter 7 Bankruptcy Estate, the United States Trustee, the appellee here, obtained court-approved counsel. Among other things, Counsel for the Trustee ("Counsel") initiated an adversary proceeding against third party Brian DeAngelo, to whom Vaughn made a $300,000 pre-petition transfer. DeAngelo ultimately prevailed when the Trustee, through Counsel, failed to show that the transfer was actually or constructively fraudulent.

Counsel then applied for an award of attorney's fees and costs, with a large portion arising from the adversary proceeding against DeAngelo. Vaughn objected to this fee request. After finding that Vaughn lacked standing to object, the Bankruptcy Court allowed the fees, finding the request "reasonable."

On appeal, Vaughn maintains (1) that he has standing to challenge the fee award; (2) that this case is not equitably moot; and (3) that the Bankruptcy Court erred on the merits. Because Vaughn is correct on the first two points, and the Bankruptcy Court did not apply the appropriate legal framework when it approved the fee award, its Order will be vacated and remanded for

further proceedings. On remand, the Bankruptcy Court should also address two secondary objections that it did not consider when it approved the fee award.

I.      **BACKGROUND**

Vaughn filed a voluntary petition for bankruptcy under Chapter 13 on July 16, 2021. Bk. ECF 1.[1] The Chapter 13 Trustee then moved to convert Vaughn's case to one under Chapter 7. Bk. ECF 16. In his motion, the Trustee focused on Vaughn's failure to disclose two recent real estate transactions and related transfers. One involved Vaughn's primary residence in Fairfax Station, Virginia. He sold that home in July 2020, netting $310,028.28 after payment of liens and settlement costs. *Id.* ¶¶ 9-10. Shortly after the sale closed, Vaughn wired $300,000 to Brian DeAngelo. *Id.* ¶ 11. The second transaction involved Vaughn's vacation property in Corolla, North Carolina . *Id.* ¶ 12. On October 26, 2020, Vaughn conveyed the Corolla property via a deed of gift to a company called 1072 Lighthouse LLC, which turned out to be a "single purpose, single asset entity formed solely for the purpose of acquiring the [vacation home] from [Vaughn]." *Id.* ¶¶ 13-15.

Because of these transfers and other indications of Vaughn's lack of good faith, the Trustee sought an Order "converting [his] case to one under [] Chapter 7 so that a Chapter 7 Trustee can be appointed who can marshal the assets . . . ; pursue and unwind [Vaughn's] various pre-petition transfers; and examine whether [Vaughn] is entitled to a Chapter 7 discharge." Bk. ECF 16 at 5. The Bankruptcy Court granted that motion. Bk. ECF 35; Bk. ECF 40. The Bankruptcy Court then allowed for the appointment of Trustee's Counsel to assist the Trustee in the administration of the Estate. Bk. ECF 61.

---

[1] All references to the bankruptcy docket, unless otherwise noted, refer to filings in bankruptcy case # 21-11260-KHK in the United States Bankruptcy Court for the Eastern District of Virginia, Alexandria Division.

2

The Trustee, with the assistance of Counsel, pursued two adversary proceedings. The first (the "Lighthouse Proceeding") sought to avoid Vaughn's transfer of his Corolla vacation property to 1072 Lighthouse LLC. *See* Bk. Case No. 21-01065, ECF 1. After briefing, the Bankruptcy Court allowed for avoidance of the transaction, placing the vacation home in the hands of the estate. Bk. Case No. 21-01065, ECF 13 at 2. After the resolution of the Lighthouse Proceeding, the Bankruptcy Court allowed the Trustee to manage, rent out, and eventually sell the vacation home. *See* Bk. ECF 110, 115, 143.

After the resolution of the Lighthouse Proceeding and the sale of that property, Counsel filed his first application for compensation and reimbursement. ECF 156. Counsel sought compensation for work performed including "asset analysis and recovery," "creditor inquiries and communication," "relief from stay," "trustee employment applications," "professional fee applications," "asset disposition," "bankruptcy litigation," "accounting and tax issues," and "claims administration and objections," as well as reimbursement for expenses. *Id.* at 4-7. No party objected to the interim application, and the Court awarded $55,786.74. Bk. ECF 167 at 1.

The second adversary proceeding ("DeAngelo Proceeding") involved Vaughn's $300,000 transfer to Brian DeAngelo after the sale of his Fairfax Station home. The Trustee, through Counsel, commenced the proceeding on July 13, 2022, seeking to avoid that transfer and return the funds to the estate. Bk. ECF 127. The suit against DeAngelo included counts for fraudulent transfer, constructively fraudulent transfer, and void transfer under Virginia law. The Bankruptcy Court granted the Trustee summary judgement in part as to elements of Count II for a constructively fraudulent transfer, but otherwise denied summary judgment. *See* Bk. Case No. 22-01038-BFK, ECF 38.. On September 13, 2023, after trial, the Bankruptcy Court entered judgment for DeAngelo on all remaining counts. *See* Bk. Case No. 22-01038-BFK, ECF 69. The Court found

that Vaughn had a business relationship with DeAngelo, who was the landlord for his contracting company and a subcontractor as well. *Id.* ¶ 23. The Court further found that DeAngelo lent Vaughn money on at least two occasions, including a $200,000 loan in July 2019, *id.* ¶¶ 24-26, and that the $300,000 transfer on August 3, 2020 satisfied that loan, *id.* ¶ 28. In its conclusions of law, the Bankruptcy Court denied relief to the Trustee. It first found that as for Counts I and III (actually fraudulent transfer) "there were no badges of fraud present" and "[t]he [t]ransfer was in repayment of an undisputed debt. *Id.* at 7-8. Despite the "suspicious" timing of the transfer, the fact that "the Debtor did not gain anything from repaying Mr. DeAngelo, as he might have if he had the transferred funds to a family member, or for example where he transferred [his vacation home] to a limited liability company," was decisive. *Id.* at 8. The Court also rejected Count IV, the Virginia law claim, because the transfer was made for consideration. *Id.* at 9 (citing Va. Code § 55.1-401).

Finally, the Bankruptcy Court denied relief on Count II for constructively fraudulent transfer under 11 U.S.C. § 548(a)(1)(B). To prevail, the Trustee needed to show that: (I) "the Debtor was insolvent at the time of the Transfer or became insolvent as a result of the Transfer;" (II) "the Debtor was left with an unreasonably small capital;" or (III) "the Debtor was incurring debts that were beyond his ability to pay." *Id.* at 9-10 (citing 11 U.S.C. § 548(a)(1)(B)(I)-(III)). As for insolvency, the Court found that the Trustee's failure to present any evidence whatsoever regarding the value of Vaughn's Corolla vacation home at the time of the $300,000 transfer meant that it could not show Vaughn was insolvent at the time he paid DeAngelo. *Id.* The Bankruptcy Court also found that because, at the time of the transfer, Vaughn "was not engaged in any business or transaction that required capital," Section 548(a)(1)(B)(II) did not apply. *Id.* at 13. Finally, the Bankruptcy Court held that because Vaughn "was not in bad shape from a cash flow perspective in the Summer of 2020," he was not "incurring debts that he had no ability to repay." *Id.* at 14.

4

On November 26, 2024, the Trustee filed his final report, which included Counsel's application for legal fees and costs. Bk. ECF 238. This included an application for $80,000 in fees and costs incurred between October 2022 and October 2024, primarily relating to the prosecution of the DeAngelo proceeding. Bk. ECF 238-2. Vaughn filed an objection to the fee application. Bk. ECF 239. He argued, *inter alia*, that the fees charged for work on the DeAngelo proceeding did not pass muster under 11 U.S.C. § 330, which allows for fees only when activity is "necessary" and "beneficial" to the administration of the estate, as well as that the failure of the adversary proceeding to obtain results should lead to a reduction in fees. Bk. ECF 240. Bk. ECF 246. In addition to this objection, Vaughn insisted that Counsel had improperly billed for trustee duties and overcharged the estate for the Lighthouse Proceeding. *Id.*

The Bankruptcy Court held a hearing to resolve the matter of fees on January 22, 2025. *See* Bk. ECF 248. The Bankruptcy Court, in an oral ruling, first found that Vaughn "lacked standing to even make these arguments." *Id.* at 8. The Bankruptcy Court nevertheless proceeded to fulfill its "obligation to review the fees for reasonableness." *Id.* But in doing so, it dismissed Vaughn's arguments against the fees relating to the DeAngelo Proceeding as inappropriate "Monday morning quarterbacking," stating:

> When a trustee reviews a case, he makes decisions about the possibility of garnering assets. And in this case, the trustee decided that pursuing Mr. DeAngelo's transfer was in the best interest of the estate.
>
> I will not allow a debtor to come in and say the trustee made a bad choice just because he lost the case. And that's essentially your argument. He lost. Therefore, he shouldn't have brought the action to begin with. But when I looked at this, having been a former trustee, I would have thought there may be something here, and I'm going to pursue it.
>
> And for that reason, I stand by the Court's previous ruling that . . . this was a reasonable exercise of the trustee's business judgment. . . . And I find that the trustee made a reasonable decision to pursue that. He lost on a technicality. And as far as I'm concerned, that was a mistake on the part of the trustee.

> But that's not a good reason to refuse to pay the attorneys who actually did the work.

*Id.* at 8-9; Bk. The Bankruptcy Court did not directly address Vaughn's other objections. *Id.*

Vaughn noticed an appeal and then requested a stay pending appeal of the Bankruptcy Court's order. Bk. ECF 251, 260. The Bankruptcy Court declined to stay its order. Bk. ECF 270. The appeal has been fully briefed before this Court and is now ripe for a decision. *See* ECF 6, 7, 8.

## II. STANDARD OF REVIEW

Federal Rule of Bankruptcy Procedure 8001 authorizes an appeal as of right from final judgments, orders, and decrees of the bankruptcy court. *See* Fed. R. Bankr. P. 8001(a) (governing appeals pursuant to 28 U.S.C. §§ 158(a)(1) and (a)(2)). On such an appeal, the district court may "affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." Fed. R. Bankr. P. 8013. A district court reviews a bankruptcy court's findings of fact for clear error and its conclusions of law *de novo*. *Terry v. Meredith*, 527 F.3d 273, 375 (4th Cir. 2008) (citing *Kielisch v. Educ. Credit Mgmt. Corp.*, 258 F.3d 315, 319 (4th Cir. 2001)). This Court's *de novo* review also encompasses arguments that the Bankruptcy Court applied an incorrect legal standard. *United Mine Workers of Am. 1974 Pension Plan and Trust v. Alpha Natural Resources, Inc.*, 553 B.R. 556, 565 (E.D. Va. 2016).

## III. ANALYSIS

### A. Standing

To establish standing in a bankruptcy case, a party must show a "pecuniary interest in the outcome" of a challenge. *In re Kyeung Guk Min*, 572 B.R. 802, 804 (Bankr. E.D. Va. 2017). In the context of Chapter 11, Congress has provided that a party has standing when they are "a party in interest," which includes "all persons whose pecuniary interests are directly affected by the

bankruptcy proceedings." *In re Hutchinson*, 5 F.3d 750, 756 (4th Cir. 1993) (quoting *White County Bank v. Leavell*, 141 B.R. 393, 399 (Bankr. S.D. Ill. 1992)).

The Fourth Circuit has long held that Chapter 7 debtors lack bankruptcy standing because "an insolvent debtor . . . has no pecuniary interest in the distribution of assets among his creditors." *Willemain v. Kivitz*, 764 F.2d 1019, 1022 (4th Cir. 1985); *see also Matter of Dean*, 18 F.4th 842, 844 (5th Cir. 2021) ("In a Chapter 7 bankruptcy, the debtor out of possession has no concrete interest in how the bankruptcy court divides up the estate.") (citation and internal quotation marks omitted). But there are exceptions to the *Willemain* rule. In *McGuirl v. White*, 86 F.3d 1232, 1235, the Chapter 7 debtors argued that "because [their] claims [had] not been discharged, any portion of the estate not used to pay administrative expenses could be used . . . to pay a creditor who attempts to recover from them personally at the close of bankruptcy." The D.C. Circuit agreed, finding that the debtors' pecuniary interest in the appeal was not remote, and "any reduction in administrative expenses will necessarily reduce the amount of non-dischargeable claims that remain unpaid." *Id.*

The D.C. Circuit's logic in *McGuirl*, which has been cited multiple times by bankruptcy judges in this district, is persuasive. *See In re Kyeung Guk Min*, 572 B.R. at 805; *In re Eidson*, 481 B.R. 380, 383 (Bankr. E.D. Va. 2012). Nor is it inconsistent with *Willemain*, which grounded its holding in the fact that the debtor had no financial interest in the distribution of his estate. Vaughn, by contrast, has a clear interest in ensuring that as great a portion of his debts as is possible are paid out of the bankruptcy estate, since creditors may continue to pursue outstanding claims against him personally. The Bankruptcy Court therefore erred as a matter of law when it found that Vaughn, as a Chapter 7 debtor, lacked standing to object to the fee request.[2]

---

[2] For the same reason that Vaughn had standing before the Bankruptcy Court, he had bankruptcy appellate standing. *See McGuirl*, 86 F.3d at 1236-1237.

7

**B.     Mootness**

The doctrine of equitable mootness, as applied to bankruptcy appeals, "is a pragmatic principle, grounded in the notion that, with the passage of time after a judgment in equity and implementation of that judgement, effective relief on appeal becomes, impractical, imprudent, and therefore inequitable." *Mac Panel Co. v. Virginia Panel Corp.*, 283 F.3d 622, 625 (4th Cir. 2002). Factors in determining whether the doctrine applies include: "(1) whether the appellant sought and obtained a stay; (2) whether the reorganization plan or other equitable relief ordered has been substantially consummated; (3) the extent to which the relief requested on appeal would affect the success of the reorganization plan or other equitable relief granted; and (4) the extent to which the relief requested on appeal would affect the interests of third parties." *Id.*

While the "equitable mootness doctrine generally has been applied to substantially consummated Chapter 11 reorganizations," its "principles counseling pragmatism in the exercise of equity apply with equal force to the Chapter 7 liquidation of a bankruptcy estate." *In re Carr*, 321 B.R. 702, 707 (E.D. Va. 2005). But the *Mac Panel* test—especially the second and third factors—is not a perfect fit for a Chapter 7 appeal. Indeed, other Courts have cautioned against liberal application of the doctrine in Chapter 7 cases. *See In re Kramer*, 71 F.4th 428, 450-452 (6th Cir. 2023) (finding "concerns and rationales" behind equitable mootness not implicated in Chapter 7 liquidations); *In re San Patricio County Community Action Agency*, 575 F.3d 553, 558 (5th Cir. 2009) (declining to apply doctrine in Chapter 7 liquidation and refusing to find repayment requirement "sufficient to outweigh the general right of dissatisfied litigants to have a review of their appellate issues"). That said, Courts in this Circuit have at times dismissed Chapter 7 appeals as equitably moot. For instance, in *In re Shawnee Hills, Inc.*, 125 Fed. App'x 466, 469-470 (4th Cir. 2005), the Fourth Circuit affirmed the dismissal of a bankruptcy appeal where a party did not seek a stay and the order appealed involved the issuance of checks to hundreds of third parties.

And in *In re Carr*, 321 B.R. at 708-709, this Court dismissed an appeal as equitably moot where granting relief would impose unwarranted hardship on a third party.

The Trustee's invocation of equitable mootness here consists of a two-sentence argument and citation to a Fourth Circuit case dismissing an appeal of a consummated Chapter 11 restructuring plan. ECF 7 at 14 (citing *In US Airways Grp., Inc.*, 369 F.3d 806 (4th Cir. 2004)). This suggestion that "there is nothing" that can be done because the trustee's final report ("TFR") order "has been fully implemented," is unavailing. Chapter 7 cases may be reopened, *see In re Jason*, 2007 WL 4553608, at *1 (E.D. Va. Dec. 19, 2007), and other courts have found it possible to offer relief from the payment of unwarranted attorneys fees in such cases, *see In re Kramer*, 71 F.4th at 444. To put it in the words of the *Mac Panel* court, "granting the relief requested" would not be, as it was there, "as daunting as the reconstruction of Humpty Dumpty." 283 F.3d at 626.

Nor do the *Mac Panel* factors, insofar as they can be applied, demonstrate the need for dismissal. As for the first factor, Vaughn sought (but failed to obtain) a stay from the Bankruptcy Court. The second factor weighs slightly in favor of dismissal, as the order below has been carried out. The third factor—the extent to which relief on appeal would affect the success of any order carried out below—weighs against a finding of mootness, because relief could result in more of the estate going immediately towards repayment of his creditors. Things are similar with the fourth: third-party creditors not present would *benefit* from Vaughn's ability to obtain relief. This is simply not a case in which reversing the Bankruptcy Court's order would result in an administrative morass or raise substantial equitable concerns. *Contra Shawnee Hills*, 125 Fed. App'x at 469-470. Rather, there is "little difference in the equities in this case from those in general civil appeals in which a money judgment was entered, but no stay was obtained." *San Patricio*,

9

575 F.3d at 559. Because this case is not equitably moot, this Court may consider the merits on appeal.

## C.     Attorney's Fees

The law governing payment from a bankruptcy estate for professional services is set froth in 11 U.S.C. § 330. As a general matter, a bankruptcy court may award "reasonable compensation for actual, necessary services rendered . . . and reimbursement for actual, necessary expenses." 11 U.S.C. §§ 330(a)(1)(A)-(B). To determine "the amount of reasonable compensation" under subsection (a)(1), the bankruptcy court "shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including:

> (A) the time spent on such services;
>
> (B) the rates charged for such services;
>
> (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
>
> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
>
> (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
>
> (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title."

*Id.* § 330(a)(3). Furthermore, a bankruptcy court "shall not allow compensation for (i) unnecessary duplication of services; or (ii) services that were not— (I) reasonably likely to benefit the debtor's estate; or (II) necessary to the administration of the estate." *Id.* § 330(a)(4)

### 1. DeAngelo Proceeding

Vaughn's primary objection on appeal is to the award of approximately $80,000 in fees for legal services related to the DeAngelo Proceeding. He submits that the award should be barred

under 11 U.S.C. § 330(a)(4) because the services were not necessary to the administration of or reasonably likely to benefit the bankruptcy estate, ECF 76 at 15-25. He further argues that even if fees are not barred under subsection (a)(4), they should at least be reduced to a more reasonable amount under subsection (a)(3). *Id.* at 25-27.

The structure of Vaughn's argument, in which he separately attacks both the necessity and reasonableness of Counsel's activities under subsection (a)(4) suggests a misunderstanding of how the law operates. While he doesn't state it directly, his briefing indicates a belief that the activities must be *both* necessary and reasonably likely to benefit the estate. This is incorrect, because subsection (a)(4)'s use of the word "or" is disjunctive. That is, fees are only disallowed under the section when they were not *either* necessary to the administration of the estate *or* reasonably likely to benefit the estate. *See In re Woerner*, 783 F.3d 266, 273 (5th Cir. 2015). An alternative distributive meaning, by contrast, would distribute the "not" so that fees would be disallowed if they are either not necessary or not beneficial. But as the Supreme Court has put it: "'or' is 'almost always disjunctive.'" *Encino Motorcars, LLC v. Navarro*, 584 U.S. 79, 87 (2018) quoting (*United States v. Woods*, 571 U.S. 31, 45 (2013)). Indeed, while "statutory context can overcome the ordinary, disjunctive meaning of 'or'" and impose a distributive meaning, "here, context favors the . . . disjunctive meaning." *Id.* One need only look a few lines up, to subsection (a)(3)(C), which asks the bankruptcy court, in determining the reasonable fees to be awarded, to consider "whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered," in determining the reasonable compensation to be awarded. Because of this, the Bankruptcy Court did not err when it did not address the question of whether the DeAngelo Proceeding was "necessary," and confined its analysis to reasonableness.

11

This leaves the question of whether the Bankruptcy Court correctly determined that pursuing the DeAngelo Proceeding was reasonable. Vaughn argues on appeal that the Bankruptcy Court "did not engage" in the appropriate analysis under subsection (a)(4) to determine whether Counsel's initiation and litigation of the DeAngelo Proceeding was reasonably likely to benefit the estate. ECF 6 at 25. The Bankruptcy Code does not define "reasonably likely to benefit the estate," and the "Fourth Circuit has not yet addressed this question." *In re Vu*, 366 B.R. 511, 516 (D. Md. 2007). But this Court is persuaded by the analysis of those circuits to address the question, along with Judge Chasanow's thoughtful opinion in *In re Vu*. The courts in these cases have determined that the proper understanding of the statutory language "requires consideration of whether, at the time the services were rendered, a reasonable attorney would have believed that they would benefit the estate, rather than a subsequent consideration of the practical effects actually achieved by an attorney's services." *Id.* As Judge Chasnow made clear, this is "an objective test" and it is immaterial whether or not the Trustee or Counsel *believed* the DeAngelo Proceeding was reasonably likely to benefit the estate. *Id.*

Having outlined the appropriate standard to apply, the question becomes whether the Bankruptcy Court applied that standard here. Vaughn insists it did not, ECF 6 at 25, while the Trustee argues that the Bankruptcy Court correctly rejected an attempt at "Monday morning quarterbacking," ECF 7 at 11. While this is a close call, the record lends stronger support to Vaughn's position. To begin with, the Bankruptcy Court's analysis appeared to lean heavily on the subjective opinion of the Trustee, finding that "the trustee *decided* that pursuing Mr. DeAngelo's transfer was in the best interest of the estate," and that the decision was a "reasonable exercise of the trustee's *business judgment*." Bk. ECF 248 at 8 (emphasis added). The Bankruptcy Court also rejected Vaughn's objection as an attempt "to come in and say the trustee made a bad

12

choice just because he lost the case." *Id.* But that was not in fact the nub of Vaughn's argument. The term "Monday morning quarterbacking" implies unwarranted *ex post* criticism of a decision based on its results. *Cf. Ollila v. Backcock & Wilson Ents., Inc.*, 2018 WL 792069, at *4 (W.D.N.C. Feb. 8, 2018) ("Courts will also typically reject attempts to claim fraud via 'Monday morning quarterbacking' and dismiss allegations that attempt to prove fraud using only the benefit of hindsight."). That is not what Vaughn's argument is.. Rather, he asserted below (and maintains here) that "[a] reasonable attorney . . . would have realized, *prior to filing* the [DeAngelo Proceeding], after conducting his/her due diligence, that the services contemplated to be rendered to the bankruptcy estate would be a losing proposition." Bk. ECF 240 at 17-18 (emphasis added). Vaughn's point was not merely that the proceeding failed to benefit the estate, but that the reasons for which it failed should have been clear from the outset. *See id.* at 18-24.

By applying a subjective standard and dismissing Vaughn's objection as "Monday morning quarterbacking," the Bankruptcy Court did not apply the correct standard of whether the DeAngelo Proceeding was "reasonably likely to benefit the debtor's estate." 11 U.S.C. § 330(a)(4)(A)(ii)(I). On remand, the Bankruptcy Court should apply the appropriate, objective standard as outlined in *In re Vu* and consider whether the likely failure of the DeAngelo Proceeding should have been ascertainable to a reasonable lawyer at the time the action was initiated and pursued.[3]

Vaughn next argues that even if the fees requested pass the absolute bar of subsection (a)(4), they should be reduced in accordance with subsection (a)(3). Under that section, a Bankruptcy Court must determine the amount of compensation to be awarded by considering "the nature, the extent, and the value" of services, "taking into account all relevant factors." 11 U.S.C.

---

[3] The Bankruptcy Court may well determine on remand that the circumstances facing the Trustee and Counsel at the time of the DeAngelo Proceeding were such that pursuing the $300,000 transfer was objectively reasonable. Doing so depends on an analysis of what was or should have been reasonably known about the transfer and Vaughn's finances *ex ante*, an inquiry best undertaken in the first instance by the Bankruptcy Court.

13

§ 330(a)(3). In the Fourth Circuit, a Bankruptcy Court must consider both the factors set out in subsection (a)(3), and, in the context of an application for attorney's fees, "us[e] the *Barber* factors as well as the lodestar method." *In re Bryant*, 346 B.R. 406, 412 (Bankr. E.D. Va. 2006). The *Barber* factors are:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Id.* (quoting *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978)). "Applying these factors, attorneys' fees are to be evaluated by the lodestar method," multiplying the reasonable hours expended by a reasonable hourly rate. *Id.*

All this means that the "results obtained" by Trustee's Counsel, and any impact that the quality of Counsel's work may have had on those results, are factors a court should consider when determining a reasonable amount of fees to be awarded. *See, e.g.*, *In re Bryant*, 346 B.R. 406, 413 (Bankr. E.D. Va. 2006); *In re Vernon-Williams*, 377 B.R. 156, 190 (Bankr. E.D. Va. 2007); *In re RFS Ecusta Inc.*, 422 B.R. 53, 56-57 (W.D.N.C. 2009). If counsel's performance is deficient, that can justify a lower fee award. *See In re Digerati Techs., Inc.*, 537 B.R. 317, 338-339 (Bankr. S.D. Tex. 2015) (finding fees not warranted where "Applicant did a poor job of introducing evidence"). To be sure, the rule is not that fees are *barred* by a failure to obtain beneficial results for the estate. *In re Vu*, 366 B.R. at 521 (rejecting proposition that "any fee award is unreasonable" where "services resulted in no actual benefit to the estate"). But "minimal" results, even in pursuit of a "substantial" benefit to the estate, may warrant a meaningful reduction in fees. *In re Village Apothecary, Inc.*, 45 F.4th 940, 951 (6th Cir. 2022).

14

With this test in mind, Vaughn argues that the Bankruptcy Court erred in approving Counsel's fees when it did not consider the quality of the work performed and the results obtained. ECF 6 at 25-27. The record supports this contention. The Bankruptcy Court, in approving the fees as reasonable, stated: "I want to make sure that when attorneys have done the work, they should get paid." Bk. ECF 248 at 9. The Court continued to note that "especially because of . . . the voluntary reduction . . . in the amount of $28,392.79," the fees were reasonable. *Id.* There is no evidence that the Bankruptcy Court applied the right standard to Vaughn's objections, or meaningfully considered whether the lack of any recovery from DeAngelo merits a reduction in fees. Moreover, the Court failed to carefully consider whether Counsel's failure to introduce evidence of the vacation property's value—one of the reasons the Trustee did not prevail in the DeAngelo proceeding—was more than loss on a "technicality" and reflects the quality of counsel's work. On remand, the Bankruptcy Court must not simply determine that the fee application should be granted because "attorneys have done the work." It must instead consider all relevant factors, which here include the results obtained and Counsel's performance.

In sum, the Bankruptcy Court must remedy two legal errors when it considers the DeAngleo Proceeding fees on remand. First, it must consider whether, under the *In re Vu* standard, the fees are barred because Counsel's actions were not reasonably likely to benefit the estate at the time they were taken. Second, if it finds that the request passes this threshold, it must apply all relevant factors, including results obtained, in determining the appropriate amount, of fees to be awarded.

### 2. Other objections

In addition to Vaughn's objections to the fees awarded in connection with the DeAngelo Proceeding, he also claims that counsel was improperly awarded fees for work that should have been completed by the Trustee, and that the fees charged in relation to the Lighthouse Proceeding

15

were excessive. ECF 6 at 27-32. Because both arguments involve largely factual matters best resolved in the first instance by the Bankruptcy Court, remand is warranted for further consideration.

Vaughn first contends that many of the time entries billed by Counsel involved work that is required to be performed by the Trustee. ECF 6 at 27-30. In particular, he points to fees for certain matters relating to the management of Vaughn's vacation home, for "Trustee Employment Applications," and for "Claims Administration and Objections." *Id.* at 29-30. The parties agree that a "trustee may not employ professionals to perform routine trustee duties at the expense of the estate." *In re Parkins*, 2011 WL 1167295, at *1 (Bankr. E.D. Va. March 29, 2011) (citing *In re J.W. Knapp Co.*, 930 F.2d 386, 388 (4th Cir. 1991)). But as the Trustee points out, fees may be appropriate where tasks require legal analysis. ECF 7 at 15 (citing *In re Lexington Hearth Lamp and Leisure, LLC*, 402 B.R. 135, 145-146 (Bankr. M.D.N.C. 2009)). The Trustee insists that the Bankruptcy Court "simply agreed" that the services were compensable. ECF 7 at 18. This Court, however, cannot assume that the Bankruptcy Court considered and rejected Vaughn's arguments on this count when there is no such statement on the record. Because it did not address these questions, remand for appropriate consideration on the record of whether fees were improperly awarded for trustee duties is warranted. *Cf. Hayes v. Thompson*, 726 F.2d 1015 (4th Cir. 1984) (finding that where "court below did not address" issue, "decision . . . would be aided by the [lower] court's initial determination of the issue").

Second, Vaughn argues that the fees awarded for counsel's work on the Lighthouse Proceeding, which successfully avoided the fraudulent transfer of Vaughn's vacation property, were excessive in light of the complexity of the proceeding and tasks billed for. ECF 6 at 30-32. The Trustee disagrees. ECF 7 at 14-15. Again, however, the Bankruptcy Court, whose decision

16

focused on the DeAngelo Proceeding, does not appear to have addressed this part of Vaughn's objection. It should do so in the first instance on remand.

## IV.     CONCLUSION

Title 11 of the U.S. Code sets up a specific scheme for determining whether counsel to a bankruptcy trustee is entitled to a fee award and, if so, the reasonable amount to be awarded. Because the Bankruptcy Court did not apply that scheme to Vaughn's objections—which he has standing to pursue because of the denial of discharge—the case will be remanded for appropriate further proceedings.

Accordingly, it is hereby **ORDERED** that the Bankruptcy Court's January 22, 2025 approval of the Trustee's Final Report, insofar as it overruled Vaughn's objections to counsel's fees, is **VACATED AND REMANDED** for further proceedings consistent with this opinion.

It is **SO ORDERED.**

/s/
Michael S. Nachmanoff
United States District Judge

June 10, 2025
Alexandria, Virginia